[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Based upon admitted allegations of the complaint and evidence presented at a hearing before the court the following findings are made.
The plaintiff, Larry G. Gilliam, is the Zoning Compliance Officer of the Town of Chester, and is charged with the duty of enforcing the Zoning Regulations of the Town.
Prior to November 4, 1986, the defendant Lance S. Parker, was the co-owner of a parcel of land consisting of four (4) acres, more or less, located on Railroad Avenue in Chester, Connecticut, and being bounded by Chester Creek. On November 4, 1986, said premises were conveyed by the defendant and the co-owner to A G Enterprises. The defendant reserved therein for himself, his heirs and assigns, the southeasterly corner of said premises, being a parcel running 45 feet in a west-east direction and 29 feet in a north-east direction. These premises and the waters of Chester Creek adjacent thereto are the subject of the present action.
The defendant is presently the sole owner of said property located at Railroad Avenue, Chester, Connecticut, which is the subject of the present action. The subject property is less than two acres. On the premises is a small building measuring 12' x 14', and extending from the land into Chester Creek is a dock. The building is being used to store various building materials and equipment. Said property and the creek adjacent thereto are CT Page 960 located in a Waterfront Design District 2 (WD-2) as described in Section 71 of the Zoning Regulations of the Town of Chester (hereinafter "Zoning Regulations").
The defendant has constructed a structure on pontoons in the waters of Chester Creek adjacent to his property. The subject property is a staging area for said construction. The defendant is occupying said structure as a residence and claims it to be a "houseboat".
On October 15, 1993, the plaintiff issued an order to the defendant to discontinue his activities which are claimed to be a violation of the zoning regulations in regard to the use of said property and the waters adjacent thereto. In this cease and desist order, the plaintiff cited to the defendant's violation of the Zoning Regulations, 121A; 121A.1; 121B; 121B.1; 121C; 121D; 71; 71A.1; 71A.2; 40A; 40B.1; 40C; 40D; 40E and 40V.
Zoning Regulations 121A and 121A.1 require the issuance of a zoning permit before the commencement of construction, placement, relocation or installation of any improvements, other than an accessory improvement which is neither a building nor a sign. The defendant has not applied for and does not have a zoning permit for the construction of any improvements on his property or on the waters of Chester Creek adjacent to his property. Under Zoning Regulations 71.A, 71A.1 and 71A.2, all permitted uses in the WD-2 zone are special principal uses which require authorization by special exception.
There are two boats at a dock extending from the subject site. The first is a Motor Sailor cruising boat and the second is the subject 40' long "houseboat" The defendant admits to construction of a houseboat at the site in question. The houseboat was built from and over the site and both boats are serviced by electricity and other requirements over and through the subject real estate site. The defendant was living on the motor sailor while building the houseboat, and he intends to live on the houseboat. He has made application to register the structure as a houseboat on pontoons with an inboard outdrive.
The court has no information or evidence as to when the 12" x 14" building structure on the real estate premises was built or when the dock was constructed. The court also has no information as to whether or not any subdivision approval was required or sought prior to the conveyance of November 4, 1986. CT Page 961
The plaintiff alleges and asks this court to determine that:
I. The defendant's use of the property is in violation of Zoning Regulations 71A; 71A.1; and 71A.2.
II. Said lot and the building located there on are in violation of the requirements of the WD-2 district with respect to minimum lot area (two (2) acres), minimum lot width (200 feet), minimum lot rectangle (150 x 300) and side setbacks (40 feet).
III. The creation of said lot and the use thereof is in violation of Zoning Regulation 40A, 40B.1, 40C, 40D, 40E and 40V which require that any lot, and building improvements located thereon, comply with the minimum area, width and setback requirements prescribed for the zone.
The plaintiff seeks the following relief:
A. A temporary injunction prohibiting the defendant, his agents or employees from using said premises for any purpose without applying for the appropriate zoning permit, specifically including, but not limited to:
 1. Construction or maintenance of buildings, improvements or structures on said premises.
 2. Construction or maintenance of building, improvements, structures or vessels in the waters adjacent thereto.
 3. Occupation for residential purposes of any building, improvement or structure, including any alleged vessel, on said premises or in the waters adjacent thereto.
B. A permanent injunction prohibiting the defendant, his agent or employees from using said premises as aforesaid.
C. A mandatory injunction requiring the defendant to remove all buildings, improvements or structures located on said premises which have been built, constructed or placed thereon subsequent to November 4, 1986;
D. Civil penalties from the defendant in the amount authorized by Section 8-12 of the Connecticut General Statutes for the defendant's failure to comply with the Cease and Desist Order CT Page 962 described in the complaint.
General Statutes 19a-227 et seq. deal with the issue of the anchorage of houseboats. The existence of these statutes providing for the director of health of any town, city, etc. to designate limits within navigable waters of the State would infer that absent any such designation by the appropriate authority there is no limitation. The houseboat is in the water. How and if it is secured to the dock or anchored or lashed to the other boat is unknown by this court. From the evidence before the court there is no doubt that the houseboat is in a navigable waterway (See General Statutes 15-3a(c)).
The defendant contends that the zoning administrator lacks jurisdiction over this use of his property. According to Connecticut common law, ownership of land abutting navigable waters extends to the high water mark on the shore. Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 597, 587 A.2d 126, cert. denied, ___ U.S. ___, 112 S.Ct. 64, 116 L.Ed.2d 39 (1991). In addition, the owner has certain rights to use the land between the high and low water mark and the waters extending therefrom to the point where they become navigable. Id. However, these "common law riparian rights are subject to reasonable police regulation in the interest of the public welfare and have been held subject to such regulation for many years." Bloom v. Water Resources Commission, 157 Conn. 528, 536, 254 A.2d 884 (1969).
The defendant's own testimony establishes that the subject property was reserved from the conveyance of 1986 in order to use the site for docking purposes. Admittedly, the site is and was being used to build a houseboat and also to service and store the houseboat and the motor sailor.
Section 71A of the Zoning Regulations of Chester provides in part as follows:
 71A. USES PERMITTED. In any Waterfront Design District designated WD-2 or WD-1 there shall be permitted:
 71A.1 SPECIAL PRINCIPAL USES. The following principal uses and buildings only when specifically authorized in the particular instance by a special exception granted by the Commission subject to the conditions prescribed in or pursuant to Section 130: CT Page 963
 (A) Offices of naval architects, yacht brokers, marine surveyors, marine insurance brokers, marine contractors, marine laboratories, marine engineering companies and other like marine service businesses;
 (B) Sail lofts, ship chandleries, bait and tackle shops, agencies for the sale of boats, marine engines, marine equipment and fuel and lubricants for marine use;
 (C) "Yard or facilities consisting of wharves, docks, slips, basins and other appropriate appurtenances for building, fabricating, repairing, servicing or storing boats having a length overall not exceeding (65) feet except that this section shall not preclude transient vessels in excess of sixty-five (65) feet from using docks, wharves, slips, basins and other appropriate appurtenances while in the water;"
(D) Marinas;
(E) Yacht clubs.
The defendant's use of the premises as admitted is in violation of the Zoning Regulation 71A.1.C.
Section 71A.2 provides:
71A.2. ACCESSORY USES. Any accessory use or improvement but not including the storage, sale or dispensing of fuels or lubricants except for boats and not including any sign or building except in conformity with the following provisions;
 (A) Signs — No sign shall be permitted accessory to a use described in Section 71A. I. except as expressly authorized by the special exception authorizing such use; and
 (B) Buildings — No building accessory to a use described in Section 71A.1 shall be used for residence purposes unless the area of the lot upon which the special principal use is located conforms CT Page 964 to the minimum required for all dwelling units thereon.
There is no evidence before the court to establish that the small structural building is or was being used for residential purposes in violation of 71A.1 nor is there any other such violation of 71A.2. The court does not find that the motor sailor or the structure constructed on pontoons is a "building" as referred to in 71A.2(B). If the intention of 71A.2(B) was to include boats as structures, it would have so stated. Specific reference is made about boats in the previous 71A.1(C).
This court further finds that the subject real estate does not conform to WD-2 district requirements with respect to minimum lot area (two acres), minimum lot width (200 feet), minimum lot rectangle (150 X 300), and minimum side yard. By admitting paragraph three of the plaintiff's complaint, the defendant admits the lot to be 45' x 29'. Accordingly, this court finds a violation of Zoning Regulations 40A and 40E in that the premises are being used in violation of 71A, and that the premises have changed in size and shape so as to create a lot not in conformity with the zoning regulations which have been in effect since 1986 (160C).
This court does not find a violation of Zoning Regulations 40B.1, 40C, 40D or 40V, as each of those sections have to do with a building or improving structures on the land. Other than the fact that it is currently serviced by electricity, this court has no evidence before it regarding the circumstances of the erection of the small building, nor does this court have any evidence concerning water, sewer, or septic service.
Accordingly, the court orders:
1. A temporary injunction prohibiting the defendant, his agents or employees from using said premises for any purpose without applying for the appropriate zoning permit, specifically including, but not limited to:
 A. Construction or maintenance of buildings, improvements or structures on said 29' x 45' premises.
 B. Construction or maintenance of buildings, improvements, structures or the use of said lot to build, fabricate, repair, service or store boats.
CT Page 965
 C. Occupation for residential purposes of any building or improving structure, on the 29' x 45' premises.
2. Civil penalties from the defendant in the amount authorized by General Statutes 8-12 for the defendant's failure to comply with the Cease and Desist Order will be considered by the court at a hearing to be held at 9:15 on February 17, 1994.
JOHN WALSH, J.